# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

YOLANDA CARTER,                Case No. 1:13-cv-112
      Plaintiff,                    Barrett, J.
                                          Litkovitz, M.J.

   vs

COMMISSIONER OF            **REPORT AND**
SOCIAL SECURITY,          **RECOMMENDATION**
      Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum. (Doc. 20).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in April 2009, alleging disability since March 6, 2009 due to degenerative disc disease, a herniated nucleus pulposus and bipolar disorder. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) John S. Pope. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On August 25, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.   The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The [plaintiff] has not engaged in substantial gainful activity since March 6, 2009, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease, post clipped aneurysm, right knee osteoarthritis with chronic anterior cruciate ligament (ACL) deficiency and meniscus tear, headaches, bipolar disorder, [and] personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following exceptions: she is limited to unskilled tasks involving only occasional contact with the public, coworkers, and supervisors. There must be no strict production requirements. She must never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to noise and vibrations as well as all exposure to hazards.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1]Plaintiff's past relevant work was as a fast food manager and fast food worker. (Tr. 27, 82-83).

7. The [plaintiff] was born [in] . . . 1970 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 1, 2007, through the date of this decision (20 C.F.R. 404.1520(g)) and 416.920(g)).

(Tr. 13-28).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 40,000 unskilled, light jobs in the regional economy such as inspector, addresser and sorter/packer.  (Tr. 28, 83-84).

4

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ's residual functional capacity (RFC) is not supported by substantial evidence because he "picked and chose" from the record; and (2) the ALJ improperly weighed the opinion evidence of record. (Doc. 13.)

1. The ALJ's RFC formulation is supported by substantial evidence.

For her first assignment of error, plaintiff asserts the ALJ's RFC formulation is not substantially supported because he selectively cited to the evidence of record. (Doc. 13 at 6). Rather than put forth specific evidence establishing that plaintiff has functional limitations not accommodated by the ALJ's RFC formulation, plaintiff's assignment of error is more

5

appropriately described as a hodgepodge of criticisms – seven in total – regarding how the ALJ addressed the evidence of record.   Plaintiff fails to specify how any of her criticisms demonstrates that she has additional functional limitations that would justify reversing the ALJ's decision; it is therefore difficult to discern how or why the ALJ's RFC formulation is erroneous. Nevertheless, the Court will address plaintiff's critiques in turn.

First, plaintiff maintains the ALJ described the evidence in such a way as to minimize the severity of her impairments.   Plaintiff specifies that the ALJ did not discuss: (1) "the multiple steroid injections and radiofrequency ablation" she has received since 2008 with regard to her back surgery; (2) objective findings of tenderness in her spinal muscles; or (3) plaintiff's subjective complaints of ongoing pain in her back and legs post-back surgery.   (Doc. 13 at 6-7, citing Tr. 713-802, January 2010 to May 2011 Treatment Notes from Centerpoint Health). Review of the ALJ's decision contradicts plaintiff's assertion that this evidence was not considered.

At the outset, the undersigned notes that the ALJ referenced the evidence cited by plaintiff, the Centerpoint Health treatment notes, fifteen times throughout his discussion of the medical evidence.   *See* Tr. 23, 24, 26.   Of further note is that this evidence pertains to plaintiff's mental impairments and contains no objective, clinical, or opinion evidence with regard to plaintiff's physical impairments or treatment for her back.   It is therefore entirely unclear why plaintiff cites to this evidence to support her assertion that the ALJ's RFC formulation does not accommodate her physical functional limitations.   Nevertheless, review of the record and the ALJ's decision establishes that the ALJ addressed the evidence related to plaintiff's back condition.

6

The ALJ discussed evidence from plaintiff's treating neurosurgeon reflecting that she "had undergone extensive conservative therapy, including physical therapy, epidural steroid injections, and oral nonsteroidal anti-inflammatories, with minimal relief." (Tr. 21). The ALJ also discussed plaintiff's subjective reports of constant back pain and the medication she takes for back spasms. *See* Tr. 17-18. Insofar as plaintiff asserts the ALJ failed to discuss objective findings of back tenderness and plaintiff's complaints of pain post-back surgery, she does not to cite to any such evidence that the ALJ purportedly ignored. Regardless, the Court's review of the record establishes that the ALJ acknowledged findings of significant tenderness in plaintiff's right lower back paraspinal muscles from a September 26, 2009 examination and also discussed normal findings from subsequent examinations. *See* Tr. 19-20, citing Tr. 542-44, 651-53, 655-56. The ALJ further noted post-back surgery records showing improvement of 70% of overall pain relief and musculoskeletal exam showing no tenderness; full range of motion except in lumbar rotation, extension and lateral bending; full strength and normal reflexes; negative straight leg raising; intact sensory examination; and steady gait. (Tr. 21, citing Tr. 668-73). As the ALJ considered and discussed plaintiff's steroid injections, the objective findings of spinal muscle tenderness, and plaintiff's subjective complaints, plaintiff's argument is not well-taken and the ALJ did not err in this regard.

Second, plaintiff argues that the ALJ mischaracterized evidence from her treating neurosurgeon, Andrew Ringer, M.D. Following a fall and reports of dizziness in October 2009, plaintiff underwent a CT of her head and was admitted to the hospital for a ruptured anterior communicating artery aneurysm. (Tr. 436-48). Plaintiff underwent a craniotomy for clipping of simple anterior communicating artery aneurysm in November 2009. (Tr. 433-35). Plaintiff

7

subsequently treated with Dr. Ringer.  (Tr. 364-422).  Dr. Ringer examined plaintiff in

December 2009 and found that she had normal examination findings and no postoperative

complications following the aneurysm surgery, and only mild symptoms, allowing her to return

to "normal activities."  (Tr. 368).  Dr. Ringer reported that plaintiff had returned to "full

activity" and that her post-operative Rankin score was 1.[3]  (Tr. 368).  Dr. Ringer's examination

findings showed grossly normal vision, normal gait and station, and normal muscle strength in

her arms and legs.  (Tr. 368-69).  Her sensory and reflex responses also were normal.  (Tr.

369).  Dr. Ringer stated that plaintiff was "doing very well after surgery" to treat an arterial

aneurysm, and she had returned home and was no longer using physical or occupational therapy.

*Id.*  These findings were considered by the ALJ in formulating plaintiff's RFC.  *See* Tr. 19.

Though the argument is not entirely clear, plaintiff appears to assert that the ALJ erred in

the manner in which he discussed Dr. Ringer's findings.  Plaintiff states that while Dr. Ringer

reported she was "doing well," that she continued to report significant limitations such as

memory loss, dizziness, and dependence on others.  Plaintiff further posits that what Dr. Ringer

"meant" by his report that she was "doing well" and was capable of "returning to normal

activities," was that she could return to a level of activity far below what others would consider

"normal."  (Doc. 13 at 7).

Review of the ALJ's decision establishes that he accurately recited the evidence from Dr.

Ringer's December 10, 2009 examination of plaintiff.  *See* Tr. 19, citing Tr. 368-69.  Dr. Ringer

found that plaintiff had a generally normal examination; full muscle strength; normal gait and

---

[3]The modified Rankin Scale (mRS) is a commonly used scale for measuring the degree of disability or dependence in the daily activities of people who have suffered a stroke or other causes of neurological disability. The scale runs from 0-6, running from perfect health without symptoms to death.   Individuals with an mRS of 1 are categorized as having "[n]o significant disability.   Able to carry out all usual activities, despite some symptoms."

station; and normal cognitive function and thought process. (Tr. 368-69). Dr. Ringer gave

plaintiff a Rankin score of 1, indicating that she may have some symptoms but could carry out all

usual activities and had no significant disability. There is simply nothing from Dr. Ringer's

records from which the Court can discern that he "meant" anything other than what he reported

and plaintiff's unsupported supposition otherwise does not serve as a basis for finding fault in the

ALJ's discussion of this evidence. To the extent plaintiff's argues the ALJ did not consider her

subjective reports, this is contradicted by review of the ALJ's decision. *See* Tr. 17, 27

(discussing plaintiff's subjective complaints of memory deficits and vision difficulties).

Accordingly, the ALJ did not err in discussing this evidence from Dr. Ringer.

Third, plaintiff argues that the ALJ erred by mischaracterizing and ignoring evidence

from her mental health treatment at Centerpoint. Plaintiff maintains that while the ALJ stated

that "it is unclear to what extent plaintiff had treatment at Centerpoint" the evidence

demonstrates that she treated there in 2003 and 2006, and again starting in 2009. (Tr. 289-304,

Tr. 566-95, Tr. 713-802). Plaintiff claims the ALJ ignored the 2003 and 2006 evidence.

Plaintiff also claims that the ALJ misstated the record when he determined that in general, the

record shows that plaintiff is able to interact with her many doctors when in fact a March 2009

treatment note shows plaintiff left the emergency room after becoming upset with a doctor.

(Doc. 13 at 7). Plaintiff's arguments are not well-taken.

The ALJ's decision provides:

The [ALJ] next considered the [plaintiff]'s mental health treatment history. Prior
to the alleged onset date, the records show a case management services treatment
plan with Centerpoint dated July 2006 for bipolar disorder NOS and episodic
alcohol dependence (Exhibit 2F). She had previously been diagnosed with major

---

*See* http://www.strokecenter.org/wp-content/uploads/2011/08/modified_rankin.pdf (last visited January 24, 2014).

depressive disorder, recurrent, moderate, and alcohol dependence, in March 2003 (*id.*, pages 7-16).

(Tr. 22).   This excerpt establishes that the ALJ did not ignore the 2003 and 2006 Centerpoint treatment records as plaintiff contends and the Court's review of the treatment records establishes the ALJ appropriately summarized this limited evidence.   *See* Tr. 289-304.

In addition, plaintiff's reliance on a single instance showing plaintiff walked out of a medical consultation due to being "upset" does not establish that the ALJ erred in characterizing plaintiff has having "few difficulties relating with her many doctors." (Tr. 14).   Implicit in the ALJ's statement is his recognition that plaintiff exhibited some, but not many, problems in dealing with her medical practitioners.   As plaintiff cites to no other instances of plaintiff having such issues and the undersigned has not identified any upon review, the ALJ's summary of the record evidence on this score is substantially supported.

Fourth, plaintiff argues the ALJ over-emphasized her alcohol abuse as it related to her June 7, 2010 suicide attempt.   Plaintiff asserts the ALJ incorrectly implied that she was regularly drinking and was not taking her psychotropic medications during the pertinent time period. Plaintiff maintains that the record evidence includes only one report from August 2010 of plaintiff's consumption of a single beer.   Plaintiff contends her statement of not having an alcohol problem since 2003 is accurate as a "one-day relapse does not constitute a 'drinking problem.'" (Doc. 13 at 7-8).   Plaintiff's argument is not supported by the record evidence nor does it establish that the ALJ incorrectly formulated her RFC.

On June 7, 2010, plaintiff presented to the emergency room following a motor vehicle accident.   Plaintiff reported that she had been drinking alcohol, had stopped taking her psychiatric mediations since October 2009, and did not remember if she lost consciousness.   (Tr.

10

657). Plaintiff stated that she purposefully drove her car into a tree in an attempt to commit suicide. (*Id.*). Plaintiff had a limited range of motion in her neck and tenderness to palpation in her back, but physical examination findings were otherwise largely normal and she was referred to psychological services. (Tr. 658).

The ALJ accurately summarized this evidence. *See* Tr. 20. Likewise, the ALJ's description of plaintiff's consumption of alcohol in August 2010 is accurate. *See* Tr. 23, quoting Tr. 767 ("In August 2010, [plaintiff] reported buying a 40-ounce beer in June, which did not 'work out' well for her."). The only other reference to plaintiff's alcohol use was in connection with the ALJ's credibility assessment of a statement submitted by plaintiff's friend who stated plaintiff never had problems with drugs or alcohol, which was inconsistent with plaintiff's self-reported alcohol dependence problem until 2003. *See* Tr. 18. The ALJ accurately summarized the evidence of plaintiff's alcohol consumption and nothing in his decision demonstrates he improperly considered plaintiff's alcohol use in formulating the RFC.

Fifth, plaintiff claims the ALJ's statement that plaintiff exhibited normal findings at the July 2009 consultative examination with Jennifer Bailey, M.D., is not "entirely true." (Doc. 13 at 8). Dr. Bailey reported that plaintiff's physical examination findings included normal muscle strength in all muscle groups, normal neurological functioning, normal ranges of motion, a normal gait, and comfortable posture in both sitting and standing positions. (Tr. 338-40, 343-44). Plaintiff could stand on either leg and ambulate heel-to-toe without difficulty. Plaintiff's gait and straight-leg raise testing were normal. Dr. Bailey found no evidence of spasm or tenderness in the lumbar spine. Sensation was intact. Dr. Bailey assessed chronic

back pain, exogenous obesity, and hepatitis C and opined that plaintiff was "capable of performing all activities commensurate with her age." (Tr. 344).

Plaintiff asserts that the ALJ erred because he did not note Dr. Bailey findings of "reduced lumbar range of motion and elevated blood pressure." (Doc. 13 at 8). Dr. Bailey's report provides that plaintiff had 80% out of 90% flexion and 20% out of 30% extension (Tr. 340), which Dr. Bailey stated "are within normal limits." (Tr. 343). Plaintiff's blood pressure was 150/89. (Tr. 342).[4]

The ALJ accurately summarized the evidence and did not err in describing the range of motion findings as "normal" given Dr. Bailey's statement that, while reduced, plaintiff's lumbar range of motion was within normal limits. To the extent plaintiff had elevated blood pressure at the examination, plaintiff has never asserted and no doctor has opined that her blood pressure causes her any functional limitation. Thus, any error by the ALJ in failing to note this apparently irrelevant finding is harmless.

Sixth, plaintiff argues the ALJ erroneously stated the record evidence does not establish that she has short-term memory problems. The Court is compelled to note that, as is the case with much of the Statement of Errors, plaintiff fails to cite to the page in the ALJ's decision containing this purported finding. Plaintiff's failure in this regard has caused the Court to exhaustively comb through the record to identify the ALJ's purported statements. In this instance, the undersigned is unable to locate the alleged statement and, aside from the ALJ's references to the medical evidence and plaintiff's subjective reports, the Court does not find any instance where the ALJ made a determination regarding plaintiff's purported short-term memory

---

[4]Normal systolic levels are below 120; normal diastolic levels are below 80. *See* http://www.may oclinic.org/diseases-conditions/high-blood-pressure/in-depth/blood-pressure/art-20050982 (last visited January 27,

impairment. *See* Tr. 17, 19, 27. Without such evidence, there is no basis for finding the ALJ erred.

To the extent plaintiff contends the record supports a limitation for this condition, she fails to cite to any objective or clinical evidence demonstrating as much. Plaintiff cites only to her subjective reports of having short-term memory problems. (Doc. 13 at 8, citing Tr. 571). The Court notes that this evidence is illegible, but insofar as the notation contained in the subjective portion of the note reads "STM ↓," plaintiff's subjective report of lowered short-term memory is not supported by any clinical, objective, or opinion evidence and is contrary to her own treating psychiatrist's opinion that her short-term memory is intact. *See* Tr. 896. For these reasons, plaintiff's argument on this issue is without merit.[5]

Seventh, plaintiff contends the ALJ erred in stating that she did not have "further treatment for her knee after the [August 2010 consultative] evaluation" because the record includes evidence plaintiff received physical therapy for her knee in October 2010. (Doc. 13 at 9, citing Tr. 857). The October 25, 2010 treatment note plaintiff cites includes a notation that she "is on PT therapy now for her knee." (Tr. 857). There is no evidence of plaintiff's physical therapy treatment in the record. Rather, it appears that this notation is based on plaintiff's subjective reporting to the examining physician; notably, this record also includes the doctor's report that "Pt is angry because the previous Dr . . . stated that she is able to work and that she has no income now." (*Id*.). Without any actual evidence of record establishing that plaintiff

_____

2014).

[5]Plaintiff appears to argue in connection with her Fifth and Sixth arguments that her statements regarding her lifting ability and functional limitations from psychiatric impairments should have been given more credence by the ALJ. *See* Doc. 13 at 8, citing Tr. 380, 808, 838, 875 (asserting that plaintiff has reported getting easily upset, being paranoid, and having a racing mind). Plaintiff does not cite to any evidence supporting these subjective statements. Further, plaintiff has not raised an assignment of error regarding the ALJ's credibility determination; thus, the Court declines to engage in any analysis thereof.

was engaged in physical therapy for her knee in October 2010, there is no basis for finding that the ALJ erred in his assessment of the evidence.

For the reasons stated above, the undersigned finds that the ALJ did not err in how he considered the medical evidence and that his RFC formulation is substantially supported by the record. Plaintiff's first assignment of error should thus be overruled.

2. The ALJ did not err in weighing the medical opinions of record.

For her second assignment of error, plaintiff argues the ALJ erred in weighing the medical opinions of record. Plaintiff maintains the ALJ should have given greater weight to the Functional Capacity Evaluation (FCE) completed by Cyndi Lewis, MSPT, on April 15, 2008.[6] Plaintiff asserts the ALJ erred in evaluating this opinion because: (1) it documents that plaintiff has a limited ability to sit for 60 minutes, consistent with her subjective testimony, which the ALJ erroneously omitted in formulating her RFC; (2) it is based on positive objective findings, which the ALJ ignored, and, thus, is more valid than the opinions of the reviewing physicians; (3) the ALJ failed to "specify how much weight he accorded it"; (4) the ALJ did not cite to specific evidence supporting his finding that the FCE was inconsistent with other normal examination findings; and (5) the ALJ erred by not analyzing the opinions as required by Social Security Ruling (SSR) 06-3p.[7] (Doc. 13 at 10-13) (emphasis in original). Plaintiff further argues the ALJ erred by discounting the February and March 2010 opinions of her case manager, Ceede O., B.S., without engaging in the requisite analysis outlined in SSR 06-3p. (Doc. 13 at

---

[6]Plaintiff, again, fails to provide any citations to the evidence she references. The FCE is part of the evidence from the University of Cincinnati at Tr. 308-12.

[7]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson*, 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson*

14

11, citing Tr. 596-601, 603-07).  Last, plaintiff claims the ALJ improperly discounted the opinions of Ms. O and plaintiff's treating psychiatrist, Sharon Stanford, M.D., for being reliant on plaintiff's subjective reports.  (Doc. 13 at 12-13).  For the following reasons, the undersigned finds that the ALJ properly weighed the opinions of record regarding plaintiff's functional capacities.  The Court will first address the FCE completed by physical therapist Lewis.

Plaintiff was evaluated by therapist Lewis on April 15, 2008.  (Tr. 308-12).  Therapist Lewis opined that plaintiff had functional tolerances and lifting capabilities consistent with sedentary work.  (Tr. 308).  Therapist Lewis observed "mild range of motion deficits in the trunk and cervical spine as well as bilateral shoulder flexion.  Moderate strength deficits were noted in the trunk and bilateral knees and hips.  Mild strength deficits were noted in bilateral shoulders and elbows.  Mild flexibility deficits were noted in bilateral hamstrings. . . . [Plaintiff] demonstrated limitations in sustained functional and postural tolerances. . . . Lifting tolerances were also limited." (*Id.*).  Given these findings, as well as plaintiff's intolerance to cardiovascular activity, therapist Lewis opined that plaintiff's cardiovascular endurance was at a sedentary level.  (Tr. 311).

The applicable regulations set forth three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source.  20 C.F.R. §§ 404.1527, 416.927.  A treating source opinion on the nature and severity of a claimant's impairments is generally entitled to the most weight, and the Social Security Administration must give "good reasons in [its] notice of determination or decision for the weight [it gives the

---

*v. Comm'r of Soc. Sec.,* 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). This "good reasons" requirement applies *only* to treating sources. *Smith,* 482 F.3d at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)[8]) (internal citations omitted). Where a medical source is not a treating source, the ALJ must consider the following factors in determining how much weight to afford the opinion: the length and nature of the treatment relationship, the evidence that the physician offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the physician was practicing a specialty. *See* 20 C.F.R. § 416.927(c). *See also Ealy*, 594 F.3d at 514.

At the outset, the Court notes that, contrary to plaintiff's assertion, the ALJ both considered and weighed therapist Lewis' opinion. *See* Tr. 25. The ALJ discussed the findings of the examination and stated that therapist Lewis' opinion was not persuasive because it did not account for the current diagnoses and because her findings were not consistent with the objective evidence as a whole, noting that both contemporaneous and later produced findings did not support a finding that plaintiff was limited to sedentary work. (*Id.*). To the extent plaintiff asserts the ALJ was required to give an additional label to the opinion, such as "less weight," she has cited to no authority, nor is the Court aware of any, supporting such a requirement.

---

[8]20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d) and are now found at §§ 404.1527(c) and 416.927(c).

As a physical therapist, therapist Lewis is not a "medical source" and there is no regulation mandating that her opinion be given any specific weight. Physical therapists are not acceptable medical sources under the Social Security regulations. *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists), with 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 404.1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source); *Jamison v. Comm'r*, No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (Dlott, J.) (same). Because physical therapists are not considered acceptable medical sources under the regulations, the ALJ was not required to give any special deference to therapist Lewis' FCE. Consequently, the ALJ did not err by not identifying whether he gave "great weight," "little weight," or "no weight" to the opinion; his discussion of the opinion was sufficient as set forth below.

Plaintiff maintains the ALJ erred by not evaluating the opinion in conformity with the requirements of SSR 06-3p. SSR 06-3p provides that opinions from other sources, such as therapist Lewis, "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). SSR 06-3p further provides that ALJs should evaluate these opinions under the factors employed for analyzing opinions from "acceptable medical sources," such as the length and nature of the

17

treatment relationship; the consistency of the opinion with the record evidence; and the opinion's supportability. *Id.* Though plaintiff claims that the ALJ failed to address the SSR 06-3p factors, this is contradicted by a review of the ALJ's decision.

The ALJ included the following in his explanation for finding therapist Lewis' opinion unpersuasive: (1) the one-time evaluation occurred prior to plaintiff's alleged disability onset date; (2) therapist Lewis did not take into account all current diagnoses; (3) the opinion is not supported by the whole of the objective evidence; and (4) there are multiple normal examination findings, including the July 2009 consultative examination findings from Dr. Bailey, that are inconsistent with therapist Lewis' examination results. (Tr. 18, 25). This analysis demonstrates that the ALJ considered some of the factors set forth in SSR 06-3p in evaluating this "other source opinion," including the length and frequency of treatment and the supportability and consistency of the opinion. The undersigned thus finds that the ALJ properly considered therapist Lewis' treatment relationship with plaintiff, the evidence supporting and contradicting her opinion, and the consistency of her opinion with other record evidence as required by SSR 06-3p.

Plaintiff's contention that the ALJ ignored objective findings contained in therapist Lewis' opinion is similarly baseless. The ALJ noted that during the evaluation, plaintiff "demonstrated functional tolerances and lifting capabilities consistent with a sedentary physical demand category, reporting pain between a 3 and 5 on the pain scale. Cardiovascular endurance was generally poor." (Tr. 18). Plaintiff fails to identify any specific objective findings that the ALJ was required to discuss and did not. Moreover, "[a]n ALJ need not discuss every piece of

18

evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

Plaintiff also takes issue with the ALJ's finding that therapist Lewis' opinion is inconsistent with "repeat normal examinations." (Tr. 25). The ALJ's finding is supported by substantial evidence.

Dr. Bailey's normal examination findings, discussed *supra*, are inconsistent with therapist Lewis' findings of strength and range of motion deficits. S*ee* Tr. 310, 338-40, 343-44. In addition, Dr. Bailey's examination results are consistent with Dr. Ringer's December 2009 examination findings that plaintiff had normal muscle strength and was capable of returning to normal activities. (Tr. 369). These reports support the normal exam findings cited by the ALJ.

Plaintiff's remaining contention is that the ALJ should have included an alternate sitting and standing option in the RFC formulation as therapist Lewis' opinion is consistent with plaintiff's subjective reports that she cannot stand for longer than 60 minutes. Therapist Lewis opined that plaintiff could stand only occasionally, no more than 2 hours in an eight-hour workday. *See* Tr. 309. As plaintiff concedes, there is no other medical evidence supporting this extreme restriction. Moreover, Dr. Bailey did not find any limitation in plaintiff's ability to stand (Tr. 344); Dr. Ringer determined that plaintiff could return to normal activities (Tr. 368); plaintiff reported to Michael Webb, M.D., in September 2010 that she was able to stand for up to four hours at a time (Tr. 861); and the state agency reviewing physician, William Bolz, M.D., opined that plaintiff was capable of standing and/or walking about six hours in an eight-hour workday. (Tr. 627). Given that the vast majority of the opinion evidence from the "acceptable

19

medical sources" is entirely inconsistent with therapist Lewis' opinion, the undersigned finds that the ALJ did not err in not adopting the standing limitation.

Regarding the mental health opinions, plaintiff maintains the ALJ failed to analyze Ms. O's opinions as required by SSR 06-3p. Plaintiff also asserts that given the nature of mental health treatment, the ALJ erred by discounting Ms. O and Dr. Stanford's opinions because they allegedly relied on plaintiff's subjective statements.

On February 1, 2010, Ms. O completed a mental impairment questionnaire. (Tr. 596-601). Ms. O opined that plaintiff had marked restrictions in her activities of daily living, extreme difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace, and had three episodes of decompensation of at least two weeks duration. (Tr. 599). Ms. O generally determined that plaintiff was "unable to meet competitive standards" in most work related functions. (Tr. 598-99). Ms. O further opined that plaintiff could not tolerate the stress of working with others and was unable to adopt even minor changes that occur in everyday workplace settings. (Tr. 598). According to Ms. O, plaintiff's mental impairments do not allow her to effectively handle the interactions and changes that occur with working with different personalities. *Id.* Ms. O also found that plaintiff remained paranoid and anxious despite medication and continued to have residual symptoms. (Tr. 599).

Ms. O completed a second evaluation on March 8, 2010. (Tr. 604-07). Ms. O identified the following significant clinical mental status abnormalities: "Client says she's still afraid in crowds. Does not go out of house much unless has an apptmnt w/Doctors or case mgr. Clt says depressed most of the time – 'don't want to get up off couch.'" (Tr. 605). When asked to describe plaintiff's cognitive status, Ms. O provided: "Clt says afraid all time for fear of stroke

20

happening again. Difficult to focus on anything for too long." (*Id.*)[9] Ms. O opined that

plaintiff was unable to tolerate the stress of working with others or the everyday stresses of a

workplace setting, and was unable to adapt to even minor changes. (Tr. 606).

Dr. Stanford, a psychiatrist at Centerpoint, completed a mental RFC on July 5, 2011.

(Tr. 894-99). Dr. Stanford reported that she saw plaintiff once every three months. She also

reported that plaintiff's diagnoses included bipolar disorder, personality disorder, and alcohol

dependence in early, full remission. Plaintiff's current GAF score was 40, but her highest in the

past year was 60. (Tr. 894). The clinical findings that Dr. Stanford reported include auditory

hallucinations, occasional suicidal ideation, and irritable and depressed mood. *Id.* She opined

that plaintiff was unable to meet competitive standards in understanding and remembering very

short and simple instructions; unable to work in coordination with or proximity to others without

being unduly distracted; unable to complete a normal workday and workweek without

interruptions from psychologically based symptoms; and unable to accept instructions and

respond appropriately to criticism from supervisors, respond appropriately to changes in routine

work setting, and deal with work stress. (Tr. 896). Dr. Stanford attributed those limitations to

plaintiff's fear of stroke, impaired long-term memory deficits, anxiety, and her inability to focus

or concentrate on a task for fear of stress and recurrent stroke. Plaintiff found "[b]eing around

of a lot of people frightening and confusing." *Id.* Dr. Stanford reported that plaintiff could not

tolerate the stress of working with others or the everyday stress of a workplace setting and was

unable to adapt to even minor changes. *Id.* Dr. Stanford opined that plaintiff had marked

difficulties in maintaining social functioning and maintaining concentration, persistence and

---

[9]The majority of Ms. O's observations and opinion are similarly based entirely on plaintiff's subjective
reports and will not be reiterated here. *See* Tr. 605-606.

pace. (Tr. 897). Dr. Stanford concluded that plaintiff was likely to miss more than four days of work per month. (Tr. 898).

The ALJ gave "little weight" to Ms. O's opinions, noting that Ms. O was not an acceptable medical source. He further noted that the opinions consisted of standard medical form questionnaires and did not include a narrative explanation. The ALJ also noted that the opinions were based primarily on plaintiff's subjective reports and not objective evidence; he identified that Ms. O "appears to be reporting only the [plaintiff's] complaints" as opposed to her own opinion. Further, the ALJ determined that the opinions were not consistent with plaintiff's case management notes. (Tr. 26).

Regarding Dr. Stanford's opinion, the ALJ identified several reasons for discounting this opinion: (1) there were no psychiatry visits of record that matched Dr. Stanford's signature; (2) the opinion appears to match Ms. O's opinion both in content and handwriting; (3) there was not an accompanying narrative explanation for the "fill-in-the-blank" opinion; and (4) there are not progress notes in the record completed by Dr. Stanford, which calls into question her status as a treating or examining source. The ALJ therefore did not give "much weight" to Dr. Stanford's opinion. (Tr. 26-27). For the following reasons, the undersigned finds the ALJ properly weighed the above opinion evidence.

The ALJ engaged in the necessary analysis under SSR 06-3p in considering Ms. O's opinions. As stated above, SSR 06-3p counsels ALJs to consider a number of factors in weighing opinions of "other sources" such as Ms. O, including the length and nature of the source's relationship with the claimant; consistency with other evidence; whether the source presents supporting evidence; whether the opinions is well-explained; the specialty area of the

source; and "other factors that tend to support or refute the opinion." SSR 06-3p, 2006 WL 2329939, at *3. Review of the ALJ's decision demonstrates that he weighed Ms. O's opinions in conformity with the requirements of SSR 06-3p.

The ALJ properly acknowledged that Ms. O, although not an acceptable medical source, was plaintiff's case manager and primary mental health provider. The ALJ considered the following in weighing Ms. O's opinions: (1) her qualification of having a Bachelor's of Science; (2) the nature of her treatment relationship with plaintiff as her case manager and their monthly meetings; (3) the consistency of the opinions with other opinion and record evidence; (4) how well Ms. O explained her opinions; (5) whether Ms. O cited relevant evidence supporting her opinions; and (6) the fact that Ms. O appeared to be directly relating plaintiff's subjective reports. (Tr. 26). Plaintiff's assertion that the ALJ discounted these opinions solely because Ms. O was not an acceptable medical source (Doc. 13 at 11) is baseless and wholly contradicted by the ALJ's thorough discussion of this opinion evidence. Accordingly, the undersigned finds that the ALJ complied with SSR 06-3p in weighing Ms. O's opinions.

Moreover, the ALJ's reasons for discounting Ms. O's opinions based on inconsistency, lack of support, and being overly reliant on plaintiff's subjective reports are substantially supported by the record. As noted above, Ms. O's March 2010 opinion contains 12 responses, six of which Ms. O responds to with statements beginning "Client says . . ." or "Clt states . . ." or the like. (Tr. 605-06). The undersigned recognizes that the opinions of mental health providers are necessarily dependent on the subjective statements of their patients as "talk therapy" is often the primary tool employed by professionals treating mental health impairments. *See Warford v. Astrue*, No. 09-cv-52, 2010 WL 3190756, at *6 (E.D. Ky. Aug. 11, 2010) (relying on

23

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). However, Ms. O's March 2010 opinion is not merely reliant on plaintiff's subjective statements – it is a recitation of them. Ms. O was asked to describe "all significant clinical mental status abnormalities"; plaintiff's cognitive status; the effects of plaintiff's impairment; and "significant problems with social interactions." (Tr. 605-06). Ms. O did not provide her opinion with regard to these questions but simply reiterated plaintiff's statements. Further, with respect to both the February and March 2010 opinions, Ms. O failed to cite to any record evidence or treatment notes whatsoever supporting her conclusions. The ALJ is not required to accept medical opinions from mental health providers that are based solely on plaintiff's subjective complaints and not supported by clinical observations. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010). It was therefore reasonable for the ALJ to give these opinions less weight as they were not supported by record evidence, overly reliant on plaintiff's reports, and were not well-explained.

Review of the treatment notes also supports the ALJ's decision to give "little weight" to Ms. O's opinions as her findings are not consistent with her treatment notes and other record evidence. For example, while Ms. O opined that plaintiff had extreme functional limitations and listed a litany of supporting symptoms, including "blunt, flat or inappropriate affect"; "difficulty thinking or concentrating"; "incoherence"; "illogical thinking"; and "recurrent severe panic attacks," the record evidence reflects otherwise. (Tr. 597). For example, Centerpoint treatment notes from January, February, April, and May 2011 include observations that plaintiff had a full range and appropriate affect; her thought process was organized; and plaintiff was euthymic, though also occasionally sad. (Tr. 715, 718, 728-29, 732, 745).[10] Notes from 2010 contain

---

[10]The Court notes that plaintiff experienced the loss of her son and was consequently expressing feelings of grief and sadness in January 2011. *See* Tr. 744, 748-50. However, the subsequent treatment notes discussed above

24

similar observations. *See* Tr. 762 (in September 2010, plaintiff had an appropriate and

congruent affect, displayed euthymic mood, and was cooperative); Tr. 763, 767 (same in August

2010); Tr. 777-79 (same in June and July 2010, though plaintiff appeared anxious and with a

constricted affect in June); Tr. 784-85, 787 (same in April 2010).   Notably, on March 25, 2010,

Ms. O observed that plaintiff had a clear and coherent stream of thought; no abnormalities of

thought; no suicidal thoughts; was oriented x3; and had fair insight.   (Tr. 788).   Such

observations are completely inconsistent with her opinions, generated only one month prior.

Moreover, Ms. O's opinions are inconsistent with the opinions of consultative examining

psychologist, Norman Berg, Ph.D., and reviewing state agency psychologists Irma Johnson,

Psy.D., and Patricia Semmelman, Ph.D.   Dr. Berg observed plaintiff to have goal-directed

thought processes; normal affect; and at most moderate limitations in her mental health

functional abilities.  S*ee* Tr. 328-36.   Dr. Johnson and Dr. Semmelman similarly opined that

plaintiff had no more than moderate functional limitations resulting from her mental

impairments.   *See* Tr. 345-62, 608-25.

In light of the above, the ALJ's determination that Ms. O's opinions are inconsistent with the

treatment notes and other record evidence and, thus, deserving of "little weight" is supported by

substantial evidence.

        Last, plaintiff maintains the ALJ erroneously discounted Dr. Stanford's opinion with the

blanket assertion that "[n]one of the reasons [cited by the ALJ for discounting the opinion] are

valid." (Doc. 13 at 12).   Plaintiff fails to refute with evidentiary support any of the ALJ's

reasons, stated above, for not giving more weight to Dr. Stanford's opinion.   Rather, plaintiff's

argument appears to be entirely based on her assertion that as Dr. Stanford's opinions are

_____

reflect that plaintiff appropriately coped with this unfortunate loss.

consistent with those of Ms. O, they should have been given greater weight.   Plaintiff's argument is unavailing.

The Court notes that the record evidence does not clearly establish that Dr. Stanford is plaintiff's treating psychiatrist.   The RFC questionnaire completed by Dr. Stanford states that she had treated with plaintiff once a month for three months as of July 2011.   (Tr. 894, 899). However, there are no treatment notes in the record signed by Dr. Stanford and plaintiff does not challenge the ALJ's decision in this regard.   As there are no treatment notes from Dr. Stanford, there is no clinical evidence or treatment observations that support her opinion.   To the extent Dr. Stanford provided responses on the RFC assessment form, she failed to provide any narrative explanations for these opinions.[11]   Moreover, as discussed above, the findings contained in the report such as plaintiff's incoherence, persistent disturbances of mood or affect, and blunt, flat, and inappropriate affect (Tr. 895) are inconsistent with significant evidence of record, including treatment records from Centerpoint and the other medical source opinions discussed previously. Accordingly, the ALJ's decision to discount the opinion for lack of support and inconsistency with other record evidence is substantially supported.

For these reasons, the undersigned finds that the ALJ's decision to discount the opinions of plaintiff's mental health providers is supported by substantial evidence and plaintiff's second assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and that this matter be closed on the

---

[11]The ALJ observed that the majority of the form appears to have been completed by Ms. O based on the handwriting.   Even if this were the case, the mere fact that Ms. O may have completed the form for Dr. Stanford does not necessarily justify discounting a medical opinion that is otherwise supported by clinical evidence and consistent with the medical evidence of record.

26

docket of the Court.

Date: _2/4/14_____

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

YOLANDA CARTER,                                Case No. 1:13-cv-112
     Plaintiff,                                 Barrett, J.
                                               Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).